BILL W. RICKMAN and wife )  C/A No. 01A01-9609-CH-00412
RUTH Y. RICKMAN )
)  WILSON CHANCERY No. 8410
Plaintiffs-Appellees )
)
)
v. )
)
)
JOHN A. MOLIN and wife )
FREDERICKA R. LITTLEFAIR-MOLIN )
)
Defendants-Appellants )

**FILED**

**April 18, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

## COURT OF APPEALS OF TENNESSEE

## MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE CHANCERY COURT OF WILSON COUNTY AT LEBANON, TENNESSEE

THE HONORABLE C. K. SMITH, CHANCELLOR

JAMES H. KINNARD
P. O. Box 667
107 W. Market Street
Lebanon, TN 37087
    Attorney for Plaintiffs-Appellees

MICHAEL A. MEYER
SIDWELL & BARRETT, P.C.
121 First Avenue, South
Suite 200
Franklin, TN 37064
    Attorney for Defendants-Appellants

**AFFIRMED AND REMANDED**

**Houston M. Goddard, Presiding Judge**

CONCUR:

FRANKS, J.
SUSANO, J.

O P I N I O N

John A. Molin and his wife, Fredericka R. Littlefair-Molin, appeal a judgment rendered against them in favor of Bill W. Rickman and his wife, Ruth Y. Rickman, in the amount of $17,314.97.

The dispute arose in connection with a contract the parties entered into relative to property the Molins desired to sell and the Rickmans desired to purchase, which was never consummated.

The Chancellor found that the Rickmans were entitled to recover $15,914.97 expenses in improving the residence located on the property in question which under the terms of the contract they were occupying and renting. In addition, the Chancellor found the Rickmans were also entitled to the return of $1400 paid as earnest money.

The Molins appeal raising the following issues:

1. Whether the plaintiff-buyers properly exercised their purchase option under the lease purchase agreement at issue, thereby creating a valid and binding contract.

2. Whether the defendant-sellers could be held liable for the expenses which the plaintiff-buyers incurred to improve the property at issue, where the lease-purchase agreement expressly provided that the plaintiffs would bear the expense of any improvements they made to the subject property.

3. Whether plaintiffs are entitled to recover the costs they incurred to improve the subject property on a theory of quantum meruit, notwithstanding the existence of the contract language described in issue no. 2, above.

4. Whether the Chancellor abused his discretion in awarding prejudgment interest in this case.

The agreement between the parties was drawn by a real estate agent under the employ of the Molins and is styled, "CONTRACT FOR SALE OF REAL ESTATE." (See Appendix.) It is on a printed form (apparently a standard real estate form used by the realtors) and in almost all particulars appears to be as the caption designates. The Molins insist that certain verbiage mandates otherwise. They contend that the content was in fact an option and, because not exercised, no sales contract was created. In support of their contention they rely upon the following language of the contract: "Letter of intent from Buyer by April 1st 1991 & house can be shown."

The proof by the Molins shows that this letter of intent was required before the Rickmans were entitled to purchase the house and that, should it not be given, they were at liberty to show the house to other prospective purchasers.

The letter of intent was never delivered because the Molins were unable to correct a problem with the sewage system and septic tank in accordance with the following provision of the contract:

> Necessary repairs to be made to septic and drain line and health letter to be provided by seller.

The Chancellor found, and the record supports his finding, that the Rickmans would have delivered the letter of intent and purchased the property had the repairs been made to the septic and drain line and had they received a letter from the

3

Health Department that the problem had been corrected. As a matter of fact, the real estate agent called by the Molins testified that the property could not have been financed absent a letter from the Health Department.

We find that the record supports the proposition that the Rickmans did not complete their part of the bargain because--despite persistent importuning by the Rickmans--the Molins breached the agreement relative to the sewer problem. Certainly the Rickmans did not want to purchase the property without the sewer problem being resolved and, although the proof does not reflect, it is likely they would have had to borrow money pledging the property as security to raise the purchase price. In any event, we find that whether the instrument be denominated a contract of sale or, as insisted by the Molins, an option to purchase, it was breached by the Molins.

With regard to issues two and three, the contract also contains the following provision:

> All cost of redecorating, such as painting, wall-papering, landscaping & carpeting may be done at the expense of the buyer.

Apropos of these issues, the authors of Am.Jur.2d., with appropriate citations, state as a general rule the following:

### § 704. Repudiation of, or refusal to perform, contract

> As a general principle, where one party to a contract repudiates it or refuses to perform it, the other party is not obligated to perform his promise,

4

and such nonperformance does not render the other party liable in damages. Furthermore, a refusal by one party to perform obviates the necessity of a tender of performance by the adverse party. A party positively refusing to perform his contract cannot sue the other for nonperformance, whether the promises are independent or not, if one is the consideration for the other and the contract is wholly executory. A refusal to accept tender of performance is a breach of contract excusing a party from further performance of its part. Where all the provisions of a contract are so connected with a party's obligations that when one of them is repudiated it in effect renders further performance impossible, the repudiation obviates the necessity of any tender or further performance on the opposing party's part.

17A Am.Jur.2d, Contracts, §704, Page 718

In light of the foregoing and because the Molins originally breached the contract, we conclude that as a result thereof the Rickmans suffered damages in the amount awarded by the Trial Court and are entitled to recover that amount, plus the $1400 earnest money deposited.

In view of our conclusion that the Rickmans are entitled to damages for the Molins' breach of contract, it is unnecessary that we address the alternate ground for recovery mentioned by the Trial Court--quantum meruit. We do note in this connection, however, that the testimony of the real estate agent called by the Molins that the improvements made by the Rickmans did not increase the value of the property was discounted by the Trial Court, and further that some expenditures were not merely cosmetic, in that underpinning was done in the basement to insure the structural soundness of the dwelling.

With regard to the last issue addressing pre-judgment interest, the Chancellor decreed the monetary award should begin

drawing interest on June 15, 1991, the date the Rickmans vacated the premises.  Such an award, which is authorized by T.C.A. 47-14-123, lies within the discretion of the Chancellor.  Under the facts of this case, we find no abuse of discretion.

For the foregoing reasons, the judgment of the Trial Court is affirmed and the cause remanded for collection of the judgment and costs below.  Costs of appeal are adjudged against the Molins and their surety.

_____
Houston M Goddard, P.J.

CONCUR:


_____
Herschel P. Franks, J.


_____
Charles D. Susano, Jr., J.